IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| LEWIS A. COCHRAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 7:11-cv-01925-KOB-TMP |
| ) | |
| OFFICER JASON JAMES, ) | |
| ) | |
| Defendant. ) | |

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Lewis A. Cochran, filed this *pro se* action pursuant to 42 U.S.C. § 1983, alleging that he had been deprived of rights, privileges, or immunities afforded him under the Constitution or laws of the United States of America during his incarceration at the Bibb Correctional Facility in Brent, Alabama. Specifically, he contends the defendant subjected him to excessive force on July 24, 2010. The sole remaining defendant in this action is Correctional Officer Jason James.[1] The plaintiff seeks compensatory and punitive damages, as well as unspecified injunctive relief. In accordance with the usual practices of this court and 28 U.S.C. § 636(b)(2), the complaint was referred to the undersigned magistrate judge for a preliminary report and recommendation. *See McCarthy v. Bronson*, 500 U.S. 136, 111 S. Ct. 1737, 114 L. Ed. 2d 194 (1991).

---

[1] The complaint named other defendants, but all other claims were dismissed by order dated October 24, 2011. (Doc. #10).

CASE HISTORY

On October 26, 2011, the court entered an Order for Special Report directing that a copy of the complaint be forwarded to the remaining defendant and requesting he file a special report addressing the plaintiff's factual allegations.[2] The parties were advised that the special report, if appropriate, might be considered as a motion for summary judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure. On December 22, 2011, the defendant filed a special report accompanied by affidavits and copies of certain documents from the Bibb Correctional Facility. (Doc. #15). The plaintiff filed a "Traverse" to the defendant's special report on January 13, 2012. (Doc. #16). An amended special report to include a copy of a July 25, 2010, "Body Chart" was submitted by the defendant on December 4, 2012. (Doc. #22). On October 16, 2012, the parties were notified that the court would construe the defendant's special report as a motion for summary judgment and the plaintiff was notified that he would have twenty days to respond to the motion by filing affidavits or other material if he chose. The plaintiff was advised of the consequences of any default or failure to comply with Fed. R. Civ. P. 56. *See Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985). The plaintiff filed a document titled "Motion Opposing Summary Judgment" (Doc. #21) on November 29, 2012. This matter is now before the court on the defendants' special report (Documents #15 and #22) being construed as a motion for summary judgment, and the plaintiff's responses thereto. (Documents #16 and #21).

---

[2] The order for special report was amended on November 7, 2011, (Doc. #13) to address a slight correction in the factual allegations as noted by the plaintiff in document # 12.

## SUMMARY JUDGMENT STANDARD

Because the special report of the defendants is being considered a motion for summary judgment, the Court must determine whether the moving party, the defendants, are entitled to judgment as a matter of law. Summary judgment may be granted only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Federal Rule of Civil Procedure 56.* In making that assessment, the Court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial, and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to

> any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." [citations omitted]. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

898 F.2d at 1532.

## SUMMARY JUDGMENT FACTS

Viewing the evidence in the light most favorable to the non-moving plaintiff, the following facts appear to be undisputed. The plaintiff is presently housed at the Fountain Correctional Facility in Atmore, Alabama, but his sworn complaint alleges the use of excessive force on July 24, 2010, during an incident at the Bibb Correctional Facility. On that date, while conducting security checks as the E-Dorm rover, the defendant entered the plaintiff's living area at approximately 5:00 pm and ordered the plaintiff to get off his bunk. A few minutes earlier, the defendant had searched another inmate near plaintiff, and he intended to search plaintiff for weapons or contraband. (Doc. #15-1). Plaintiff asked why and said, "Fuck you, I'm tired." *Id*. Defendant ordered plaintiff a second time to get off the bunk, and plaintiff said, "Fuck you, I ain't coming down, ya'll always fucking with me."[3] The defendant replied, "Get your ass off that goddamn bunk before I dump your ass off of it," and then proceeded pick up the bunk and turn it over.[4] (Doc. #1, p. 9). As plaintiff fell

---

[3] Although plaintiff did not include these words in his description of the incident, he also has not disputed defendant's evidence concerning their use.

[4] The court notes that in a statement attached to the disciplinary record, which is attached to the complaint, the plaintiff gave a different description of the incidence. In this statement, he said

from the bunk, he grabbed defendant's collar to break his fall, and this caused the defendant to fall onto the plaintiff. The defendant then placed his hands around the plaintiff's throat and slammed him to the floor, where he jumped on top of the plaintiff, pressed a knee into his chest, and began screaming obscenities at him. *Id*. After a brief moment on the floor, defendant released the plaintiff and instructed him to stand against the wall while the defendant conducted a search of plaintiff's bunk. No contraband was found. The defendant then instructed the plaintiff to get dressed, and he escorted him to the Health Care Unit for a body chart examination.

A copy of a body chart prepared in the Health Care Unit at 5:45 pm on July 24, 2010, (Doc.#15-2, p. 14), quotes the plaintiff as stating that he "got pulled off the rack," but indicates no signs of "physical trauma, cuts or bruising." *Id*. When plaintiff complained of great pain the next day, he was again taken to the Health Care Unit and another body chart dated July 25, 2010, (Doc. #22-1),[5] was prepare. This chart shows that the plaintiff had a "bruise noted to left inner thigh [and] swelling and redness noted to nose," as well as a "small round knot" on his "left right wrist" and that he was complaining of "soreness and pain" in

---

that the defendant did not turn over the bunk, dumping plaintiff off of it, but grabbed plaintiff by the neck and pulled him off the bunk. See Statement, Doc. #1-1, p. 6. This also is the description of the incident given in the affidavits of inmates Nelson Turner and Ronnie Simmons. See Docs. # 1-3 and 1-4.

[5] The plaintiff had referenced this second body chart in his response to the defendant's special report. See Doc. #21, p. 2 and 4. The plaintiff states that he awoke the next day "in great pain" and was hardly able to move, and a correctional sergeant told him to go the Health Care Unit for assistance. *Id*. After noting that he had failed to include this second body chart in his special report, the defendant sought leave to amend his special report to include a copy of the document. (Doc. #22)

his neck and right foot. *Id*. He was returned to the dorm with the instruction to "drop a sick call if the problem worsened."

The defendant subsequently charged the plaintiff with a disciplinary violation for failing to obey a direct order. *Id*. at 2. Plaintiff was found guilty of the infraction after a hearing and was sanctioned with thirty days' disciplinary segregation and loss of privileges.

## DISCUSSION

The Eighth Amendment's prohibition against cruel and unusual punishment is triggered when a prisoner is subjected to an "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). When force is applied by prison officials, any Eighth Amendment inquiry must concentrate on whether the force was applied in a good faith effort to maintain discipline, or was carried out maliciously or sadistically for the purpose of causing harm. *Id*. at 320. In *Hudson v. McMillian*, the Supreme Court set out certain factors that should be considered in evaluating whether the use of force was wanton and unnecessary. They include: 1) the need for the application of force; 2) the relationship between the need and the amount of force used; 3) the threat reasonably perceived by the prison official; 4) any efforts made to temper the severity of a forceful response; and 5) the extent of the injury suffered by the inmate. 503 U.S. 1, 7 (1992).[6]

---

[6] The Court in *Hudson* made it clear that the absence of serious injury is relevant to an Eighth Amendment inquiry but is not conclusive. 503 U.S. at 7.

Applying these standards to the facts before the court, and viewing the evidence favorably to the plaintiff, it is clear that the force used against plaintiff was necessary and reasonable. Although the plaintiff's and defendant's accounts of the incident differ, even the plaintiff's version reveals that he disobeyed a lawful order by the defendant to get down from his bunk and submit to a search. Although it is undisputed that the plaintiff was forcefully removed from his bunk by the defendant, the application of force was necessary to maintain order and security. The question becomes whether or not that force was excessive under the circumstances. The plaintiff contends that there was no provocation directed towards the defendant and that he had done nothing more than inquire as to the reason he was ordered to come down off the bunk. Nonetheless, it is clear that he did not initially comply with the order to get off his bank, and corrections officers are not required to explain or negotiate with prisoners when it comes to enforcement to security protocols such as shakedown searches. In the tense environment of a prison, where weapons and the potential for violence is ever-present, corrections officers must maintain security by requiring prompt compliance with lawful orders.

The degree of force used to force the plaintiff's compliance with the order was reasonable. Depending on which of plaintiff's versions is accepted, the defendant either turned over plaintiff's bunk, causing him to fall to the floor, or defendant grabbed the plaintiff by the neck and pulled him off the bunk to the floor. The defendant did not strike the plaintiff or use any weapon against him. His use of force was restrained, and he only used the force necessary to require the plaintiff to get off the bunk and submit to a search.

At worst, plaintiff suffered only minor injuries in the form of bumps and bruises. Under *Hudson*, the evidence simply does not support an inference that the officer acted maliciously and sadistically, rather than to enforce a lawful order plaintiff was refusing to obey.

The defendant presents the additional argument that the plaintiff failed to suffer sufficient injury to constitute an Eighth Amendment violation. Citing *Bennett v. Parker,* the defendant contends that the plaintiff's allegations of injury are merely conclusory and are not corroborated by supporting evidence. They point out that the "body chart" documentation prepared the day of the incident fails to reflect any injury. Because the court finds that the evidence does not support a claim for violation of the Eighth Amendment, it is not necessary to address this argument.

### **RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT**

Accordingly, for the reasons stated above, the magistrate judge RECOMMENDS that the defendants' special report be treated as a motion for summary judgment and, as such, that it be **GRANTED** and this action **DISMISSED WITH PREJUDICE**.

Any party may file specific written objections to this report and recommendation within fifteen (15) days from the date it is filed in the office of the Clerk. Written objections shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection. Objections not meeting this specificity requirement will not be considered by a district judge. A copy of the objections must be served upon all other parties to the action. Frivolous, conclusive, or general objections will

not be considered by the District Court. Failure to file written objections to the proposed findings and recommendations contained in this report and recommendation within fifteen (15) days from the date it is filed shall bar an aggrieved party from attacking the factual findings on appeal except upon grounds of plain error or manifest injustice.

A party may not appeal a magistrate judge's recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a district judge.

The Clerk is **DIRECTED** to serve a copy of this report and recommendation upon the plaintiff and upon counsel for the defendants.

DONE this the 24TH day of May, 2013.

_____
T. MICHAEL PUTNAM
U.S. MAGISTRATE JUDGE